## COMMONWEALTH OF MASSACHUSETTS
### BUSINESS LITIGATION SESSION

SUFFOLK, ss.

SUPERIOR COURT
C.A. No. 03-2012 BLS

---

------------------------------------------------------------- X
   :

TIMOTHY P. KING, attorney in fact for and on behalf
of HILDA AYER ANDERSON, and the AYER-
ANDERSON FOUNDATION, INC.    :

   :

     Plaintiffs,

   :

v.

   :

JON F. CONANT, JOHN BYORS, d/b/a WESTSIDE
MARBLE, ROBERT E. SAYRE, and BERTRAM W.  :
ALLEN

   :

     Defendants,

   :

    and

   :

Sovereign Bank, Beverly National Bank, Ipswich Bank,
Fleet Bank, Citizens Bank, First and Ocean National  :
Bank, Rockport National Bank, and New England Life
Insurance Company,    :

     Trustee Process and Reach and Apply  :
     Defendants

   :
------------------------------------------------------------- X

## VERIFIED COMPLAINT

### INTRODUCTION

By this action, Timothy P. King, on behalf of his mother, Hilda Ayer Anderson ("Mrs.

Anderson"), and the Ayer-Anderson Foundation, Inc. ("the Foundation") seek recovery of in

excess of $5,000,000 stolen by Mrs. Anderson's attorney, defendant Jon F. Conant ("Conant"),

her psychologist, defendant Robert E. Sayre ("Sayre"), her former counsel, defendant Bertram A.

Allen, and defendant John Byors, an individual who conspired with Conant and participated in

phony loan transactions to defraud plaintiffs. Mrs. Anderson is 77 years old, has a long history

of suffering from physical and personal problems, and is not capable of managing her financial

affairs. Prior to 1990, Mrs. Anderson's brother Neil Ayer managed Mrs. Anderson's finances.

After the death of Mr. Ayer in 1990, defendants Allen, Conant and Sayre insinuated

themselves into the financial affairs of Mrs. Anderson and the Foundation. Specifically, Messrs.

Conant, Sayre and Allen secured powers of attorney over Mrs. Anderson, were appointed

trustees of Mrs. Anderson's various trusts and officers of the Foundation, and/or secured

signatory authority on the bank accounts of Mrs. Anderson and the Foundation. Thereafter, in

breach of their fiduciary and professional responsibilities, defendants systematically

misappropriated funds from Mrs. Anderson and the Foundation for their personal benefit. For

example, between January 2001 and February 2003 alone (the only years for which Conant has

turned over bank account information), Conant issued checks to himself from plaintiffs' bank

accounts totaling over $700,000.

As described in detail below, defendants also defrauded plaintiffs through various

schemes, including a $500,000 investment in a non-existent Vermont marble mine, a below

market sale of plaintiffs' waterfront property to a developer friend, and by securing health

insurance and pension benefits at plaintiffs' expense and without their knowledge.

By this action, plaintiffs seek recovery of damages against defendants for breach of

fiduciary and contractual duties, fraud, negligence, professional malpractice, conversion and

violations of M.G.L. c. 93A. Plaintiffs also seek declaratory and equitable relief, including an

2

accounting of all assets of Mrs. Anderson and the Foundation, and the immediate return of all client files by Conant and Allen pursuant to Rule 1.16 of the Massachusetts Rules of Professional Conduct. To secure plaintiffs' likely judgment and preserve the damages remedy, plaintiffs also seek trustee process, real estate attachments, and an asset freeze against defendants Conant, Byors and Sayre.

## PARTIES

1.      Timothy P. King is the attorney in fact of his mother, Hilda Ayer Anderson, who resides at 33 Sleepy Hollow Road, Gloucester, Massachusetts.

2.      Plaintiff Ayer-Anderson Foundation, Inc. is a Massachusetts non-profit corporation located at 147 Wingaersheck Road, Gloucester, Massachusetts. In April 1992, Mrs. Anderson founded the Frederick Ayer Foundation, Inc., which later changed its name to the Ayer-Anderson Foundation, Inc. The Foundation was established to provide at no cost an indoor swimming pool to the disabled, elderly and Head Start program members for exercise, physical therapy, and recreation. The Foundation's original board members consisted of Mrs. Anderson, her husband Paul Anderson, and the defendant Allen. Allen also was the Foundation's clerk. Defendant Conant later was appointed a director and clerk of the Foundation.

3.      Defendant Jon F. Conant is an attorney admitted to practice in the Commonwealth of Massachusetts with a residence at 71 High Street, Gloucester, Massachusetts.

4.      Defendant Robert Sayre is a psychologist licensed to practice in the Commonwealth of Massachusetts with a residence at 4 Andrews Hollow, Rockport, Massachusetts.

5.      Defendant John Byors is an individual with a residence at 18 Ledgewood Drive,

3

Williston, Vermont.

6. Defendant Bertram W. Allen is an attorney admitted to practice in the Commonwealth of Massachusetts with a residence at 1514 Oxford Street, Berkeley, California, 94709.

7. Trustee Process defendants Sovereign Bank with an address at 154 Main Street, Gloucester, Massachusetts 01930, Beverly National Bank with an address at 240 Cabot Street, Beverly, Massachusetts 01915, Ipswich Co-operative Bank with an address at 2 Depot Square, P.O. Box 32, Ipswich, Massachusetts 01938, Fleet Bank NA with an address at 100 Federal Street, Boston, Massachusetts 02110, Citizens Bank with an address at 28 State Street, Boston, Massachusetts 02109, First and Ocean National Bank with an address at 51 State Street, Newburyport, Massachusetts 01950, and Rockport National Bank with and address at 16 Main Street, Rockport, Massachusetts 01966 are banking institutions with offices in Suffolk or Essex County, Massachusetts, and are named herein only to the extent that they have possession or control of funds, goods, effects, credits or other assets of the defendants Conant, Sayre and Byors.

8. Reach and apply defendant New England Life Insurance Company is an insurance company with an office in Suffolk County, Massachusetts, and is named herein only to the extent that it has possession or control of funds, goods, effects, credits or other assets of the defendant Sayre.

4

## FACTS

### Background

9.      Mrs. Anderson is 77 years old, has suffered for many years from serious physical and personal problems and is incapable of managing her own financial affairs. As a result, Mrs. Anderson necessarily has relied upon fiduciary advisors to manage her finances. Mrs. Anderson's income is derived primarily from two sources. First, Mrs. Anderson is a beneficiary of certain irrevocable trusts, from which she is entitled to the income, but not principal (the "Irrevocable Trusts"). In addition, Mrs. Anderson is a beneficiary of the Hilda A. Curtis revocable trust, dated November 11, 1961, from which the trustees are empowered to make payments of both interest and principal for Mrs. Anderson's benefit (the "Revocable Trust").

10.      Prior to 1990, Mrs. Anderson's brother Neil Ayer oversaw her financial affairs. As of the time of Mr. Ayer's death in 1990, Mrs. Anderson's Revocable Trust was valued at in excess of $5,000,000, and produced income of almost $200,000 per year. In addition, Mrs. Anderson was receiving income from the Irrevocable Trusts in excess of $400,000 per year.

### Misappropriation of Funds By Defendants Allen, Conant and Sayre

11.      After the death of Mr. Ayer in 1990, defendants Allen, Conant and Sayre insinuated themselves into the financial affairs of Mrs. Anderson and the Foundation. In November 1992, Mrs. Anderson executed a general durable power of attorney for the benefit of Allen. The power of attorney granted Allen complete authority over Mrs. Anderson's financial affairs. Allen also served as a trustee of the Revocable Trust.

12.      In 1992, defendant Conant secured from Mrs. Anderson a general power of attorney in his favor. In 1993, Conant also secured signing authority over the checking accounts

5

of Mrs. Anderson and the Foundation. Conant also was appointed a trustee of the Revocable Trust. Conant also kept all the plaintiffs' financial books and records and performed the "bookkeeping."

13.     In breach of their fiduciary and professional responsibilities, defendants systematically misappropriated funds from Mrs. Anderson and the Foundation for their personal benefit. For example, between January 2001 and February 2003 alone (the only years that plaintiffs have had access to bank account information), Conant issued checks to himself from plaintiffs' bank accounts totaling over $700,000.

14.     Notwithstanding plaintiffs' repeated requests, Conant has failed to turn over all client files. As recently as two weeks ago, Conant retrieved from his bookkeeper plaintiffs' account records for the year 2000, and refused to return the records to plaintiffs. Defendant Allen also had signing authority on the plaintiffs' bank accounts. Such records in the possession of defendants may reveal additional thefts.

15.     Defendant Sayre, a psychologist, counseled Mrs. Anderson and, remarkably, also insinuated himself into her financial affairs. Somehow, Sayre also was appointed a trustee of the Revocable Trust.

16.     By 2003, without plaintiffs' knowledge, Conant was paying Sayre from plaintiffs' accounts an annual salary and other payments in excess of $200,000 per year, including a $36,000 yearly "pension." Specifically, in September 2001, Conant prepared and signed a "Split Dollar Agreement" for Sayre whereby the Foundation made monthly payments to an account established at New England Life Insurance Company for Sayre's benefit. Sayre's "pension" was drawn from the Foundation's bank account with automatic withdrawals of approximately $3,000

6

per month.

17.    In addition, without plaintiffs' knowledge and at their expense, Conant added himself and his family as well as Sayre and his family to the Foundation's Blue Cross health insurance plan. When Conant's name was recently uncovered as an insured on the Blue Cross policy, he claimed that he would reimburse the Foundation for the health insurance cost.

### Conant's Sale of 143-145 Wingarsheek Road

18.    In December 1992, at the direction of Conant and Allen, the Foundation purchased property located at 143-145 Wingaersheek Road in Gloucester, Massachusetts (the "Wingarsheek Property") for $400,000. To fund the transaction, despite Mrs. Anderson's substantial assets, Allen obtained a $400,000 loan on behalf of Mrs. Anderson from Beverly National Bank, secured with a pledge of stock from the Revocable Trust. Allen executed the loan documents on behalf of Mrs. Anderson.

19.    Mrs. Anderson planned to build a house on the Wingarsheek Property, which was located next door to the Foundation's swimming pool facility. After purchasing the Wingarsheek Property, however, Conant and Allen advised Mrs. Anderson that she could not obtain the appropriate permitting to allow construction of a home on the site.

20.    Thereafter, in September 1994, Conant introduced to plaintiffs an interested buyer for the Wingarsheek Property, Deborah Caggiano. Caggiano's husband was a local contractor, and, on information and belief, a friend of Conant.

21.    Conant arranged to sell the property to Mrs. Caggiano for $315,000, resulting in an $85,000 loss to the Foundation. The Purchase and Sale Agreement for the Wingarsheek Property, dated September 1, 1994, provided that the purchase would be funded with a $6,000

7

deposit, $69,000 in cash at closing plus a $240,000 "1st mortage with lending institution." The closing was to take place six months later, on March 7, 1995. Conant thereafter agreed to extend the closing an additional seven months until October 1995.

22.     Instead of Caggiano financing the purchase through a lending institution and the Foundation receiving cash at the closing, however, Conant permitted Caggiano to sign a note to the Foundation in the amount of $240,000 at favorable terms (the "Caggiano Note"). Under the terms of the Caggiano Note, Caggiano was only obligated to make interest payments for the first twenty-two months at the rate of 8% per annum. In addition, Caggiano had the option to "renew the term of this Note for an additional year" if "Buyer has installed all underground utilities, a fully approved septic system; and completed the foundation work." Even with such favorable terms, the Caggiano Note was never paid off. Rather, in March 1998, Conant agreed to issue a new note (the "1998 Note") reflecting Caggiano's purported payments to date, forgiveness of one year of interest payments ($18,000) and extending the payment terms for an additional three years.

23.     Caggiano subsequently defaulted under the express terms of the Caggiano Note in July 1996 when she transferred the Wingarsheek Property to the Ocean View Realty Trust for $1 without notifying the Foundation as required under the Caggiano Note and related mortgage. If notified of the transfer, the Foundation had the right to immediately demand repayment. Furthermore, Caggiano secured the requisite permits and constructed a home on the Wingarsheek Property, contrary to Allen and Conant's advice to plaintiffs that home construction was not allowed.

24.     In August 2001, without plaintiffs' knowledge, Conant filed a discharge of the

8

mortgage on the Wingarsheek Property. Conant has never accounted for the amounts due under the Caggiano notes. In subsequent conversations, however, Conant stated that the purported interest paid from the notes was "extra" money, and should be used to fund an investment in a Vermont marble mine as described below.

## Conant's and Byor's Investment in a Non-Existent Marble Mine in Vermont

25. In the late 1990s, Conant introduced Mrs. Anderson to another friend, defendant John Byors. Conant identified Byors as a sculptor and owner of a marble mine in Vermont. Thereafter, Conant advised Mrs. Anderson to invest in Byor's marble mine and conspired with Byors to steal funds from plaintiffs through a series of phony loan transactions. On information and belief, Conant personally profited from the "loans" made to Byors. To date, plaintiffs have yet to locate any marble mine owned by Byors and do not believe it even exists.

26. On or about June 14, 2001, Conant loaned $210,000 to defendant John Byors, doing business as "Westside Marble." Conant prepared the loan documents for the marble mine investment. The loan to Byors was evidenced by a promissory note (the " $210k Note") and purportedly secured by a "chattel mortgage." Under the chattel mortgage, only a marble saw and 30 red marble blocks were pledged as security for the $210,000 loan.

27. Under the terms of the $210k Note, Byors was obligated to repay the loan in one year with 15% interest. In addition to repaying the loan, Byors stated he would donate $1,000,000 to the Foundation:

> In addition to the payment of principal and interest as stated above borrower contemplates making charitable gifts to the lender in the amount of $200,000 per year for a minimum of five years beginning in 2002. This assumes that borrowers business is able to support such giving at that time.

9

28.     On January 15, 2002, Conant loaned to Byors an additional $250,000 for further investment in the marble mine. This second loan was again evidenced by a promissory note (the "$250k Note") and a chattel mortgage prepared by Conant. Under the chattel mortgage, only two saws and sixty-one black marble blocks secured the $250,000 loan.

29.     Under the terms of the $250k Note, Byors agreed to repay the loan within eighteen months at an interest rate of twenty percent. In connection with the $250k Note, Byors also committed to donate an additional $500,000 to the Foundation:

> In addition to the payment of principal and interest as stated above borrower contemplates making charitable gifts to the lender in the amount of $100,000 per year for a minimum of five years beginning in 2003. This assumes that borrowers business is able to support such giving at that time.

30.     The 210k Note was due and payable to the Foundation, plus interest, on June 14, 2002. On July 1, 2002, however, Conant permitted Byors to "extend" the maturity date to March 31, 2003 under the same terms and conditions. To secure the extension, Byors purportedly sold to the Foundation "three Red Marble Blocks being numbered 4, 13 and 16 respectively."

31.     Byors has defaulted under the terms of the $210k Note by failing to repay the loan by the extended maturity date of March 31, 2003. When questioned about the default, Conant stated that Byors was traveling in China and unavailable.

32.     The $250k Note matures by its terms on June 15, 2003. As of that date, Byors will owe the Foundation an additional $325,000.

10

## Defendants' Mismanagement of Plaintiffs' Funds and Concealment Thereof

33. As set forth above, defendants Allen, Sayre and Conant were trustees of Mrs. Anderson's Revocable Trust. From the early to mid 1990's, the value of Mrs. Anderson's portfolio in the Revocable Trust averaged approximately $4,000,000, and Mrs. Anderson was able to live on the income from her trusts without invading the principal. After Conant gained control of plaintiffs' finances, however, Mrs. Anderson's purported "expenses" skyrocketed and the principal held in the Revocable Trust was rapidly depleted.

34. Essex Street Associates, the custodian of the Revocable Trust, repeatedly warned Conant that Mrs. Anderson was literally "running out of money." For example, by letter dated July 25, 2002, Conant was advised:

> [F]unds are leaving this office at the rate of $80,000/month between the Foundation and Hilda's personal needs. Based on the enclosed schedule and the capital gains taxes generated as we raise cash to meet this outflow, she probably has a year left before her trust is tapped out. ...This is a very serious situation and seems to have gotten worse over the last year or two.

As a fiduciary to Mrs. Anderson with complete authority over her finances, Conant undoubtedly was aware of the precarious financial position in which he had placed plaintiffs.

35. For several years, defendants Conant and Sayre met with Mrs. Anderson weekly. Despite their fiduciary responsibilities, however, and their constant contact, defendants never informed Mrs. Anderson either of the warnings of Essex Street Associates, or their own knowledge that the money would soon be depleted. Mrs. Anderson was not made aware that any principal from her Revocable Trust was being eroded.

36. In order for defendants to continue their misappropriation of funds and conceal their breaches of fiduciary and contractual duties, Conant failed to make any quarterly tax

11

payments owed by Mrs. Anderson in 2001 and made only one quarterly tax payment in 2002. As a result, Mrs. Anderson was assessed substantial tax penalties.

37.  In approximately January 2003, Mrs. Anderson and her family learned for the first time that the Revocable Trust had been nearly exhausted. The family immediately demanded that Conant produce an accounting for the Foundation, Mrs. Anderson, and the Revocable Trust.

38.  Conant, however, failed to cooperate. After several demands, Conant produced an eight-page "report" that was woefully incomplete and misleading.

39.  Mrs. Anderson's family thereafter made multiple additional demands for financial information from Conant. Each request, however, was rebuffed and Conant failed and/or refused to turn over the requested information.

40.  In March 2003, Mrs. Anderson terminated Conant's power of attorney. Even after his termination, Conant failed and refused to turn over all of Mrs. Anderson's and the Foundation's files in violation of the Massachusetts Rules of Professional Conduct. Finally, Mrs. Anderson's family went to Conant's law offices to retrieve their mother's files. Again, Conant rebuffed their efforts, and initially handed over only mixed up boxes of files from ten years ago, but no documents relating to Mrs. Anderson's current accounts. In April 2003, plaintiffs finally received from Conant's bookkeeper a ledger of Mrs. Anderson's account from January 2002 to the present and bank statements for only the past two years, but the turn over of documents by Conant is largely incomplete.

41.  Additional client files in the possession of Conant may reveal further defalcations. Given Conant's lack of cooperation to date, plaintiffs are concerned that Conant my attempt to destroy documents in his possession. Furthermore, Mrs. Anderson's former counsel, defendant

12

03/08/04 MON 17:12 FAX 31' 76 0172 Case 1:04-cv-12113-RGS Document 1-3 FTS INSURANCE Filed 10/05/2004 Page 13 of 22 020/045

04/30/2003 WED 15:13 FAX

Allen, also may have client files in his possession that are necessary to complete an accounting.

### The Need for Prejudgment Security

42.     Based on the foregoing facts, plaintiffs are likely to obtain a judgment against defendants Conant and Sayre in an amount in excess of $5,000,000 plus attorneys' fees, accruing interest and costs. This debt is unsecured.

43.     Based upon defendants' wrongful conduct to date, there is a clear danger that assets will be dissipated if given advance notice of the requested prejudgment security remedies.

### COUNT I
(Conversion Against Conant)

44.     Plaintiffs repeat, reallege and incorporate by reference herein the allegations contained in paragraphs 1 though 43 above.

45.     Conant has intentionally and wrongfully exercised ownership, control or dominion over plaintiffs' property and funds, and converted those funds to his own use.

46.     As a result, plaintiffs have suffered damages in an amount to be proven at trial, plus interest, costs, attorneys' fees and further consequential damages.

### COUNT II
(Breach of Fiduciary Duty Against Conant)

47.     Plaintiffs repeat, reallege and incorporate by reference herein the allegations contained in paragraphs 1 though 46 above.

48.     Conant owed fiduciary duties to plaintiffs as a result of his roles as attorney in fact, trustee, and counsel to plaintiffs.

49.     As set forth above, Conant breached his fiduciary duties to plaintiffs by, among other actions, converting funds, self-dealing, gross mismanagement, and the failure to account

13

for plaintiffs' funds.

50.    As a result, plaintiffs have suffered damages in an amount to be proven at trial

plus interest, costs, attorneys' fees and further consequential damages.

## COUNT III
### (Fraud against Conant)

51.    Plaintiffs repeat, reallege and incorporate by reference herein the allegations

contained in paragraphs 1 though 50 above.

52.    As set forth above, Conant has defrauded plaintiffs by, among other actions,

converting funds, self-dealing, gross mismanagement, and the failure to account for plaintiffs'

funds.

53.    As a result, plaintiffs have suffered damages in an amount to be proven at trial

plus interest, costs, attorneys' fees and further consequential damages.

## COUNT IV
### (Breach of Contract Against Conant and Sayre)

54.    Plaintiffs repeat, reallege and incorporate by reference herein the allegations

contained in paragraphs 1 though 53 above.

55.    Conant and Sayre have breached the terms of the trust agreements entered into for

the benefit of Mrs. Anderson. Furthermore, as the attorney for Mrs. Anderson and the

Foundation, Conant owed plaintiffs the contractual duty to render honest and competent legal

representation.

56.    As a result of Conant's and Sayre's breaches of contract, plaintiffs have suffered

damages in an amount to be proven at trial, plus interest, costs, attorneys' fees and further

consequential damages.

14

## COUNT V
### (Negligence Against Conant)

57. Plaintiffs repeat, reallege and incorporate by reference herein the allegations contained in paragraphs 1 though 56 above.

58. As set forth above, Conant served as attorney in fact for Mrs. Anderson, trustee, and legal counsel to both Mrs. Anderson and the Foundation and owed plaintiffs a duty to exercise care.

59. Conant breached that duty of care by, among other actions, converting funds, self-dealing, gross mismanagement, and failing to account for plaintiffs' funds.

60. As a result, plaintiffs have suffered damages in an amount to be proven at trial plus interest, costs, attorneys' fees and further consequential damages.

## COUNT VI
### (Fraud against Byors)

61. Plaintiffs repeat, reallege and incorporate by reference herein the allegations contained in paragraphs 1 though 60 above.

62. Byors has defrauded the plaintiffs by, among other actions, inducing plaintiffs to enter into the $210k Note and the $250k Note based upon false representations, including the non-existent marble mine, and the promise to donate $1,500,000 to the Foundation.

63. As a result, plaintiffs have suffered damages in an amount to be proven at trial plus interest, costs, attorneys' fees and further consequential damages.

15

## COUNT VII
### (Breach of Fiduciary Duty Against Sayre)

64.    Plaintiffs repeat, reallege and incorporate by reference herein the allegations contained in paragraphs 1 though 63 above.

65.    Sayre owed fiduciary duties to the plaintiffs.

66.    Sayre breached the fiduciary duties owed the plaintiffs by, among other actions, self-dealing, including arranging for compensation to himself of approximately $200,000 per year, converting funds, gross mismanagement, and the failure to account for plaintiffs' funds.

67.    As a result, plaintiffs have suffered damages in an amount to be proven at trial plus interest, costs, attorneys' fees and further consequential damages.

## COUNT VIII
### (Fraud Against Sayre)

68.    Plaintiffs repeat, reallege and incorporate by reference herein the allegations contained in paragraphs 1 though 67 above.

69.    As detailed above, Sayre defrauded the plaintiffs by, among other actions, self-dealing, including arranging for compensation to him of approximately $200,000 per year, converting funds, gross mismanagement, and the failure to account for plaintiffs' funds.

70.    As a result, plaintiffs have suffered damages in an amount to be proven at trial plus interest, costs, attorneys' fees and further consequential damages.

## COUNT IX
### (Negligence Against Sayre)

71.    Plaintiffs repeat, reallege and incorporate by reference herein the allegations contained in paragraphs 1 though 70 above.

16

72.    Sayre owed Mrs. Anderson a duty to exercise professional care.

73.    Sayre breached that duty of care by, among other actions, self-dealing, including arranging for compensation to him of approximately $200,000 per year, converting funds, gross mismanagement, and the failure to account for plaintiffs' funds.

74.    As a result, plaintiffs have suffered damages in an amount to be proven at trial plus interest, costs, attorneys' fees and further consequential damages.

## COUNT X
### (Declaratory Judgment Against Sayre)

75.    Plaintiffs repeat, reallege and incorporate by reference herein the allegations contained in paragraphs 1 though 74 above.

76.    There is an actual controversy between plaintiffs and Sayre as to Sayre's entitlement to the past, present and future payments made to him.

77.    Plaintiffs seek a declaration voiding all payments, and an order requiring that Sayre disgorge such payments for the benefit of plaintiffs, or pay as damages an amount equal to the sum disgorged.

## COUNT XI
### (Unjust Enrichment against Conant, Byors and Sayre)

78.    Plaintiffs repeat, reallege and incorporate by reference herein the allegations contained in paragraphs 1 though 77 above.

79.    Defendants were not entitled to the payments taken from plaintiffs.

80.    Plaintiffs are entitled to restitution of all sums by which defendants have been unjustly enriched.

17

## COUNT XII
(Violations of M.G.L. c. 93A, Sections 2 and 11 against Conant, Byors and Sayre)

81.    Plaintiffs repeat, reallege and incorporate by reference herein the allegations contained in paragraphs 1 though 80 above.

82.    At all relevant times, Conant, Byors and Sayre and the Foundation were engaged in trade or commerce within the meaning of M.G.L. c. 93A.

83.    As set forth above, Conant, Byors, and Sayre have each committed knowing and willful violations of M.G.L. c. 93A against the Foundation.

84.    Defendants' unfair and deceptive acts or practices conduct occurred in the Commonwealth of Massachusetts.

85.    As a result, the Foundation has suffered and continues to suffer loss of money or property in an amount to be proven at trial plus interest, costs, attorneys' fees and further consequential damages.

## COUNT XIII
(Aiding and Abetting Liability Against All Defendants)

86.    Plaintiffs repeat, reallege, and incorporate by reference herein the allegations contained in paragraphs 1 through 85 above.

87.    As set forth above, each of the defendants had knowledge of, and personally participated in the conversions, breaches of fiduciary duties, breach of trust and fraud set forth above.

88.    Each of the defendants provided substantial assistance to the formulation and implementation of the scheme to defraud the plaintiffs, with knowledge that such scheme was part of a common tortious plan.

18

89.    As a result, plaintiffs have suffered damages in an amount to be proven at trial plus interest, costs, attorneys' fees and further consequential damages.

## COUNT XIV
### (Accounting Against All Defendants)

90.    Plaintiffs repeat, reallege and incorporate by reference herein the allegations contained in paragraphs 1 though 89 above.

91.    Mrs. Anderson and the Foundation are entitled to a formal accounting of their funds and assets from each of the defendants.

## COUNT XV
### (Trustee Process and Reach and Apply Against Conant and Sayre)

92.    Plaintiffs repeat, reallege and incorporate by reference herein the allegations contained in paragraphs 1 though 91 above.

93.    Defendants Conant and Sayre maintain bank accounts at one or more of the following banks: Sovereign Bank, Beverly National Bank, Ipswich Bank, Fleet Bank, Citizens Bank, First and Ocean National Bank, and Rockport National Bank.

94.    Pursuant to M.G.L. c. 246, § 1, plaintiffs are entitled to trustee process the bank accounts and apply them to satisfy plaintiffs' likely judgment against defendants.

95.    In addition, plaintiffs are entitled to reach and apply Sayre's interest in the split dollar agreement, established at New England Life Insurance Company, and funded by the Foundation.

## REQUESTS FOR RELIEF

WHEREFORE, plaintiffs respectfully request that the Court:

A.  Order, on an ex parte basis, a trustee process attachment in the amount of $5,000,000,

19

against the goods, effects and credits of Conant, held by Sovereign Bank, Beverly National Bank, Ipswich Bank, Fleet Bank, Citizens Bank, First and Ocean National Bank, Rockport National Bank, and/or Eastern Bank;

B.  Order, on an ex parte basis, a general attachment on all real property standing in the name of Conant, or his nominees, in Essex County in the amount of $5,000,000;

C.  Order, on an ex parte basis, a trustee process attachment in the amount of $5,000,000, against the goods, effects and credits of Sayre, held by Sovereign Bank, Beverly National Bank, Ipswich Bank, Fleet Bank, Citizens Bank, First and Ocean National Bank, and Rockport National Bank;

D.  Order, on an ex parte basis, that New England Life Insurance Company, its officers, directors, shareholders, agents, servants, employees, attorneys, pledgees, nominees, successors and assigns be restrained and enjoined from conveying, transferring, alienating, selling, hypothecating, encumbering, disposing or paying any accounts, payables or other sums, amounts, income or funds to or for the benefit of the defendant Sayre up to the amount of $5,000,000;

E.  Order, on an ex parte basis, a general attachment on all real property standing in the name of Sayre, or his nominees, in Essex County in the amount of $5,000,000;

F.  Order, on an ex parte basis, that Conant, Sayre, Byors, and their nominees, agents, attorneys, successors and assigns, and all persons with actual knowledge of this order, be restrained from selling, alienating, transferring and/or otherwise disposing of any of their assets;

G.  Under Counts I though V, enter judgment in favor of plaintiffs and against Conant, in an amount to be proven at trial, plus consequential damages, accruing interest, attorneys' fees, costs and other expenses;

H.  Under Counts VI, enter judgment in favor of plaintiffs and against Byors, in the amount to be proven at trial, plus consequential damages, accruing interest, attorneys' fees, costs and other expenses;

I.  Under Counts VII through IX, enter judgment in favor of plaintiffs and against Sayre, in an amount to be proven at trial, plus consequential damages, accruing interest, attorneys' fees, costs and other expenses;

J.  Under Count X, declare that plaintiffs have no obligation to make any further payments to Sayre, and that he be required to disgorge all payments and benefits received by him;

K.  Under Count XI, award plaintiffs restitution damages against Conant, Byors and Sayre;

20

04/30/2003 WED 15:14 FAX

L. Under Count XII, award plaintiffs multiple damages and attorneys' fees against Conant, Byors and Sayre;

M. Under Count XIII, enter judgment in favor of plaintiffs and against all defendants, including Allen, in an amount to be proven at trial plus consequential damages, accruing interest, attorneys' fees, costs and other expenses;

N. Under Count XIV, against all defendants, order an accounting of all funds and assets held of plaintiffs;

O. Under Count XV, apply all secured cash and non-cash accounts to satisfy plaintiffs' judgment against defendants;

P. Award such other relief to the plaintiffs that is just and proper.

## PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE

Hilda Ayer Anderson and
The Ayer-Anderson Foundation, Inc.

By their attorneys,

Joel G. Beckman BBO# 553086
William C. Nystrom BBO#559656
Colleen C. Cook BBO#636359
SCHWARTZ and NYSTROM, LLC
419 Boylston Street
Boston, Massachusetts 02116
(617) 421-1800
(617) 421-1810 (fax)

Dated: April 28, 2003

21

## VERIFICATION

The undersigned, Timothy P. King, states under the pains and penalties of perjury that he has read the Verified Complaint; that the allegations of fact contained therein are based on his personal knowledge or on information given to him by persons with personal knowledge thereof, unless otherwise indicated; and that said allegations of fact are true to the best of his knowledge and belief.

Signed under the pains and penalties of perjury this 28th day of April, 2003.

_____
Timothy P. King